**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STEPHEN R. CREWS and CATHIE L. HUGHES, individually and as husband and wife, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| SHELTER GENERAL INSURANCE COMPANY, a Missouri corporation, | ) ) ) |
| Defendant. | ) ) |

Case No. CIV-04-749-M

## ORDER

Pending before the Court is Defendant's Motion for Summary Judgment or In the Alternative, Motion for Partial Summary Judgment. The Motion has been fully briefed and is now ripe for determination. For the reasons that follow, Defendant's Motion will be denied.

I.      Background

The following facts are undisputed. At all times relevant to this litigation, Plaintiffs Stephen R. Crews and Cathie L. Hughes, husband and wife, owned a second home in Stillwater, Oklahoma.[1] On November 20, 2002, Plaintiffs applied to Defendant Shelter General Insurance Company ("Shelter") for insurance on the home. The insurance application included, among other things, the following question: "Have you or any member of your household **ever** been convicted of or plead guilty to a felony offense?" Ex. 4 to Mot. for Summ. J. at 2 (emphasis in original). Mr. Crews answered the criminal history question by checking the box next to the word "No." *Id.* Shelter ultimately approved the application and issued the policy.

---

[1]      Since October of 2002, Mr. Crews and Ms. Hughes have resided in Claremore, Oklahoma. The Stillwater home has been unoccupied since that time.

On July 27, 2003, the home was completely destroyed by fire.  Plaintiffs immediately contacted Shelter, which assigned Scott McGuire, Senior Claims Adjuster, to process Plaintiffs' claim.  Mr. McGuire investigated the scene of the fire on July 29, 2003 and took a recorded statement from Mr. Crews the next day.  The recorded statement consisted of Mr. McGuire orally asking Mr. Crews a number of fairly routine questions regarding the location and size of the home and the extent of the fire damage, and whether Mr. Crews suspected that anybody may have set the fire intentionally.  In addition, Mr. McGuire asked Mr. Crews about his criminal history, which prompted the following exchange:

> Q.    Um, have you ever been convicted or arrested for any felonies?
> A.    Um, yeah I guess you could say that.  I was arrested at a party one time where they found marijuana and they arrested all of us.
>
> Q.    For uh, was it a felony charge or . . .
> A.    Yeah they said it was a felony charge.
>
> Q.    Okay.  Um, is that all?
> A.    Yeah.  It was supposed to be a deferred sentence but uh, it's still on there and I can't get 'em to take it off so who knows.
>
> Q.    Um, do you know when that was?
> A.    Yeah that was like 1977, 78, 79 some where in there.  Late 70's.
>
> Q.    Okay.  Um, spend any jail time on that or . . .
> A.    No.  No.
>
> Q.    Okay.  Um . . .
> A.    Didn't even spend any time in a cell, I mean nothin'.
>
> Q.    Okay.  Was that, what county was that in?
> A.    Um . . .
>
> Q.    Or was that in Oklahoma?
> A.    No it was, it was in Oklahoma State but I think it was Custer County maybe.

Ex. 3 to Mot. for Summ. J. at 4-5.

After taking the recorded statement, Mr. McGuire obtained a copy of the felony information filed against Mr. Crews on June 4, 1979 in Custer County, Oklahoma, Ex. 5 to Mot. for Summ. J., as well as the Judgment and Sentence reflecting that on September 17, 1979, Mr. Crews pleaded guilty to the crime of "unlawful delivery of cannibus sativa (marihuana)," and received a two-year suspended sentence upon entering his plea.  Ex. 6 to Mot. for Summ. J.  Based on this information, which appeared to Mr. McGuire to indicate that Mr. Crews incorrectly and untruthfully answered the criminal history question on Plaintiffs' insurance application, Mr. McGuire contacted Terry Kloeppel, Senior Underwriter for Shelter, for assistance.

In the meantime, Shelter began processing Plaintiffs' claim, requesting and then receiving a Proof of Loss form from Plaintiffs, advising Plaintiffs that the initial Proof of Loss form was incomplete, and then requesting and receiving a corrected form on August 20, 2003.

Mr. Kloeppel, after consulting with his supervisor, Jane Breen, made the decision to void Plaintiffs' insurance policy on the ground that Mr. Crews misrepresented his criminal history on Plaintiffs' insurance application.  In reaching this decision, Mr. Kloeppel relied exclusively on the insurance application, Mr. Crews's answer to Mr. McGuire's criminal history question during the taking of the recorded statement, and the court documents indicating that Mr. Crews had, in fact, been convicted of a felony in 1979.  Neither Mr. Kloeppel nor any other Shelter employee asked Mr. Crews to explain the apparent inconsistency between his answer to the criminal history question on the insurance application and his answer to a similar question during the taking of the recorded statement.  In Shelter's October 1, 2003 letter to Plaintiffs explaining the decision to void the policy, Mr. Kloeppel stated:

> The binder on the above application would not have been executed, and the purported policy of insurance would not have been issued had

> not our Agent and Company been induced to execute the binder and
> issue a policy of insurance by your false representation contained in
> your answer to the [criminal history] question referred to above.  Our
> underwriting regulations are such that insurance would not have been
> provided if you would have given a correct answer to the above
> question at the time you applied for insurance.

Ex. 14 to Mot. for Summ. J.  The underwriting regulations referenced by Mr. Kloeppel in the letter

provide, in relevant part:

> Since this policy embodies risks of individuals and property,
> applications should be solicited only from persons of good moral and
> financial reputation. . . . The following categories of property and
> persons have been defined in three categories of 'Do Not Submit',
> 'Do Not Bind' and 'Prior Underwriting Approval Required.'  In order
> to assist in keeping rates equitable, we ask you to follow these rules
> very closely.
>
> 2.      DO NOT SUBMIT
>
> a.      PERSONS
>
>        *       *       *
>
> 8.      Persons who have been convicted of, or plead
> guilty to, a felony offense.

Ex. 11 to Mot. for Summ. J. at 1-2.

Plaintiffs instituted this diversity action on June 18, 2004, asserting two state law claims

against Shelter: (1) breach of contract, and (2) bad faith breach of the insurer's duty of good faith

and fair dealing.  In relief, Plaintiffs seek both compensatory and punitive damages.  Shelter moves

the Court for summary judgment as to both claims, and separately moves to strike the request for

punitive damages.  The parties agree that Oklahoma law controls.

II.     Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The determination as to whether facts are "material" must be made by reference to the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).  The non-movant must present more than a mere "scintilla" of evidence to satisfy its burden of demonstrating that the dispute is "genuine."  *Anderson*, 477 U.S. at 252; *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)).  In application of the foregoing standard, the court examines "the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir. 1998).  The non-movant's version of any disputed issue of fact is presumed correct.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

III.    Discussion

A.     Breach of Contract Claim

The Court first considers whether summary judgment should be entered on Plaintiffs' breach of contract claim.  Shelter argues that summary judgment is appropriate because Mr. Crews undisputedly misrepresented his criminal history on Plaintiffs' insurance application, and under

Oklahoma law, Shelter was undisputedly entitled to void the policy on the basis of that misrepresentation.[2] Plaintiffs concede that Mr. Crews technically misstated his criminal history, but emphasize that under Oklahoma law, an insurer is not entitled to void an insurance policy on the basis of a misrepresentation *unless* the misrepresentation was made with intent to deceive. Plaintiffs argue that there exists a genuine issue of material fact as to Mr. Crews's state of mind.

In Oklahoma, insurers are statutorily barred from declining coverage on the basis of their insureds' misrepresentations and omissions except in limited circumstances. Those circumstances are set out in Okla. Stat. tit. 36, § 3609, which provides in part:

> A.   All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
> 1.   Fraudulent; or
>
> 2.   Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> 3.   The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

---

[2]   The policy in effect at the time of the fire contained the following "concealment or fraud" provision, which Shelter now relies upon in part as a justification for its decision to void the policy: "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." Amendatory Endorsement, Ex. 17 to Mot. for Summ. J. at 4, lns. 1-6. Interestingly, this provision is not referenced in Shelter's October 1, 2003 letter voiding the policy.

Okla. Stat. tit. 36, § 3609(A).  In *Hays v. Jackson Nat'l Life Ins. Co.*, the Tenth Circuit examined the Oklahoma Supreme Court's historical treatment of the statute, and based on that treatment, concluded that "section 3609 requires a finding of intent to deceive before an insurer can avoid the policy."  105 F.3d 583, 588 (10th Cir. 1997).  The court held that insurers are not permitted to invoke § 3609 as a basis for denying coverage unless they can establish the insured's "intent to deceive" in making the incorrect or untruthful representation at issue, regardless of how the incorrect or untruthful representation is categorized under the statute (e.g., as a "misrepresentation," an "omission," a "concealment of fact," or an "incorrect statement"), and regardless of whether the representation may also be deemed fraudulent or material, or whether the insurer would have in good faith rejected the application or provided coverage in a lesser amount had the insured answered the question correctly.  *Id.* at 588-89.

Shelter contends it is undisputed that Mr. Crews misrepresented his criminal history with an intent to deceive because he made the misrepresentation knowing that he had been convicted of a felony and that his conviction was never expunged.  As evidence, Shelter points to Mr. Crews's recorded statement.  This evidence, Shelter contends, makes "clear that Crews knew he had pled guilty to a felony charge and that he lied on his application in order for Shelter to issue him a policy."  Br. in Supp. of Mot. for Summ. J. at 9.

Plaintiffs, on the other hand, contend that there exists a genuine issue of material fact as to Mr. Crews's purported intent to deceive.  Specifically, Plaintiffs contend that when Mr. Crews filled out the insurance application, he was under the honest but mistaken impression that he had received

a deferred sentence, as opposed to a suspended sentence, on his felony conviction.[3]  Mr. Crews testified during his deposition that the trial judge in his criminal case informed him that if he agreed to plead guilty he would receive a deferred sentence – that the felony conviction would be erased from his criminal record if he stayed out of trouble during the two-year deferred term of imprisonment.  Mr. Crews further testified that he never saw the Judgment and Sentence that indicates he received a suspended sentence.  Finally, Mr. Crews testified that he first learned of his misimpression regarding his sentence after consulting with an attorney *following* Shelter's rescission of his insurance policy.

Accepting Plaintiffs' version of the disputed factual issue as true – that at the time Mr. Crews completed the application for insurance he honestly believed that he had received a deferred sentence upon his felony conviction, and that his conviction either was expunged or should have been expunged – and viewing all reasonable inferences drawn from the record in the light most favorable to Plaintiffs, the Court finds that there exists a genuine issue of material fact as to Mr.

---

[3]       The distinction between deferred and suspended sentences is significant, and particularly so for purposes of the instant action.  As explained by the Oklahoma Court of Criminal Appeals, "[w]hen the execution of a sentence is suspended, it is not vacated.  The judgment itself is not impaired or limited.  The time for its execution is merely deferred.  While under a suspended sentence, a duly convicted person is not freed from the legal consequences of his guilt." *Burnham v. State*, 43 P.3d 387, 389 n.2 (Okla. Crim. App. 2002).  In contrast, "[i]n a deferred sentence, the [trial] court retains jurisdiction and only a conditional order, not a judgment and sentence, is entered." *Nguyen v. State*, 772 P.2d 401, 403 (Okla. Crim. App. 1989), *overruled on other grounds by Gonseth v. State*, 871 P.2d 51, 54 (Okla. Crim. App. 1994).  A deferred sentence "is not a conviction until such time as the trial court pronounces judgment and sentence." *Belle v. State*, 516 P.2d 551, 552 (Okla. Crim. App. 1973).  Upon a finding by the trial court at the conclusion of a deferred term of imprisonment that the defendant has satisfied all conditions of his deferred sentence, "the defendant shall be discharged without a court judgment of guilt, and the court shall order the verdict or plea of guilty or plea of nolo contendere to be expunged from the record and the charge shall be dismissed with prejudice to any further action." Okla. Stat. tit. 22, § 991c(C).

Crews's purported intent to deceive.[4]   The existence of this disputed factual issue effectively

forecloses entry of summary judgment on Plaintiffs' breach of contract claim.[5]

    B.    <u>Bad Faith Claim</u>

       The Court next considers whether summary judgment should be entered on Plaintiffs' bad

faith claim.   Underlying Shelter's assertion that summary judgment is appropriate on this claim is

the argument that there exists a legitimate coverage dispute concerning the propriety of Shelter's

decision to void Plaintiffs' insurance policy.   Shelter points out that under Oklahoma law, the

existence of a legitimate coverage dispute necessarily precludes bad faith liability.   In response,

Plaintiffs contend that the reasonableness of Shelter's conduct (and in particular its investigation of

Mr. Crews's misrepresentation) is disputed, and that the legitimacy of the resulting coverage dispute,

therefore, is likewise in question.

       In Oklahoma, all insurers owe their insureds an implied "duty to act fairly and in good faith."

*Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611 (10th Cir. 1994) (citing *Christian v. Am. Home*

*Assurance Co.*, 577 P.2d 899 (Okla. 1977)).   A breach of that duty may give rise to liability in tort.

---

      [4]      As an aside, the Court observes that the evidence relied upon by Shelter to establish
Mr. Crews's intent to deceive (Mr. Crews's answer to Mr. McGuire's criminal history question
during the taking of the recorded statement, which Shelter believes demonstrates that Mr. Crews was
at all times very much aware of his criminal past), can easily be relied upon to support the contrary
proposition.   That is to say, if Mr. Crews truly intended to deceive Shelter by lying about his
criminal history on the insurance application, it is highly unlikely that he would have acknowledged
his criminal history during the taking of the recorded statement.   The Court finds that one may
reasonably infer from Mr. Crews's recorded statement that he had no intention to deceive at the time
of his previous nondisclosure.

      [5]      In light of this ruling, the Court need not address whether Mr. Crews's
misrepresentation was either fraudulent or material, or whether Shelter would have rejected
Plaintiffs' insurance application or provided less coverage had Mr. Crews correctly answered the
application's criminal history question.

*See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (citing *Christian*, 577 P.2d at 904).

The tort of bad faith is founded on the proposition that

> [a] claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.  The decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that there was a justifiable reason for withholding payment under the policy.  To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances.  If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable.

*Willis*, 42 F.3d at 611-12 (internal citations and quotations omitted).

Oklahoma courts have long recognized that a bad faith cause of action "will not lie where there is a legitimate dispute" as to the sufficiency of the insured's claim.  *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984).  As a consequence, in order to succeed on a bad faith claim, "the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment . . . ."  *Oulds*, 6 F.3d at 1436.

In the context of an insurer's motion for summary judgment, mere allegations of bad faith conduct are insufficient to present a jury question.  *See Willis*, 42 F.3d at 612 (citing *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla. Ct. App. 1990)).  "A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct."  *Oulds*, 6 F.3d at 1436 (citing *City Nat'l Bank & Trust Co.*, 804 P.2d at 468).  Thus, in order to justify submission of the issue to the jury, the trial court must make a preliminary finding, as a matter of law, that the insurer's conduct may be "reasonably perceived as tortious."  *Id.* at 1436-37 ("Until the facts, when construed

10

most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.").  "The insurer is held to knowledge of the applicable Oklahoma law, and the reasonableness of its decision must be judged in light of that law."  *Willis*, 42 F.3d at 612 (citing *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 913-14 (Okla. 1982)).

As stated above, Shelter contends that summary judgment must be entered on Plaintiffs' bad faith claim because "[a] legitimate dispute clearly exists as to whether Crews made a material misrepresentation in the application and whether Crews violated the concealment or fraud provision of the policy."  Br. in Supp. of Mot. for Summ. J. at 15.

In arguing that summary judgment should not be entered on their bad faith claim, Plaintiffs again focus on Mr. Crews's state of mind.  Plaintiffs submit that the reasonableness of Shelter's investigation, and hence the reasonableness of Shelter's belief that Plaintiffs' policy was properly voided, is at best questionable because Plaintiffs failed to investigate the possibility that Mr. Crews may have misrepresented his criminal history *without* any intent to deceive.  The Shelter employees who examined whether (and eventually decided that) Plaintiffs' policy should be voided, Mr. Kloeppel and Ms. Breen, testified that they made no effort to determine whether Mr. Crews misrepresented himself with an intent to deceive, which they could have accomplished by simply asking Mr. Crews about the apparent inconsistency between the insurance application and his recorded statement.  Instead, they focused their attention on the mere fact that a misrepresentation was made, and then made the assumption that the misrepresentation was made willfully and intentionally based on Mr. Crews's acknowledgment of his criminal history during the recorded statement.  Plaintiffs argue that Shelter essentially ignored the intent to deceive requirement in

11

contravention of Oklahoma law and to their detriment.  They further argue that had Shelter investigated Mr. Crews's state of mind, they would have been alerted to the obvious fact that Mr. Crews did not willfully misrepresent himself.

It is undisputed that Shelter voided Plaintiffs' insurance policy on the basis of Mr. Crews's acknowledged misrepresentation without having investigated or even considered whether Mr. Crews may have made the misrepresentation *without* an intent to deceive.  Shelter is charged with knowledge of applicable Oklahoma law at the time it made its decision to void Plaintiffs' policy, *Willis*, 42 F.3d at 612, and is thus charged with knowledge that under Oklahoma law an insurer may not void an insurance policy on the basis of an alleged misrepresentation unless the misrepresentation was made with intent to deceive.  *Hays*, 105 F.3d at 588-89.  Viewing the factual record in the light most favorable to Plaintiffs, the Court finds the record permits a reasonable inference that Shelter failed to reasonably investigate Plaintiffs' coverage claim.  The Court relatedly finds that, given the dispute as to the reasonableness of Shelter's investigation, the factual record permits differing inferences as to the reasonableness of Shelter's belief that it was authorized to void Plaintiffs' policy under Oklahoma law, and by necessity as to the legitimacy of the coverage dispute giving rise to this litigation.  Accordingly, the Court finds that Shelter is not entitled to summary judgment on Plaintiffs' bad faith claim.

C.    Punitive Damages

Finally, Shelter asserts that "[e]ven if the Court determines that a material question of fact exists to preclude summary judgment as to bad faith, reasonable minds cannot differ that the Plaintiff[s] cannot show by clear and convincing evidence Shelter's conduct rose to the level of reckless disregard of Plaintiffs' rights as required for punitive damages to be awarded under

[Oklahoma law]." Br. in Supp. of Mot. for Summ. J. at 17.  Plaintiffs counter by arguing that the evidence presented, when viewed in the light most favorable to them, is more than sufficient to justify submission of the issue of punitive damages to a jury.

Under Oklahoma law, an insurer may be subjected to punitive damages for breach of its duty to deal fairly and in good faith with its insured only if a jury finds by clear and convincing evidence that the insurer's breach was either reckless or intentional and with malice.  Okla. Stat. tit. 23, § 9.1(B)(2), (C)(2), (D)(2).  The Court finds that the undisputed facts in this action, if established through evidence at trial, could reasonably support a jury's finding, by clear and convincing evidence, that Shelter recklessly breached its duty to deal fairly and in good faith with Plaintiffs. The factual record before the Court demonstrates that Shelter voided Plaintiffs' insurance policy *after* Plaintiffs' home was completely destroyed by fire and without making any effort to determine whether Mr. Crews's misrepresentation regarding his criminal history – the sole basis for Shelter's decision to void the policy – was made with an intent to deceive, a critical element necessary to justify Shelter's decision under Oklahoma law.  Based on this record, the Court finds that Plaintiffs' request for punitive damages should not be stricken.

IV.   Conclusion

For the reasons set forth in detail above, the Court finds that Plaintiffs have established that there exist genuine issues of material fact, first, as to whether Mr. Crews misrepresented his criminal history with an intent to deceive, and second, as to the reasonableness of Shelter's belief that it was entitled to void Plaintiffs' insurance policy on the basis of Mr. Crews's misrepresentation.  The Court further finds that a sufficient factual basis exists for Plaintiffs' request for punitive damages, and that their request should not be stricken.  Accordingly, the Court finds that Shelter's Motion for

13

Summary Judgment or In the Alternative, Motion for Partial Summary Judgment [docket no. 26]

should be, and now hereby is, DENIED in its entirety.[6]

   **IT IS SO ORDERED this 25th day of May, 2005.**


                                        VICKI MILES-LaGRANGE
                                        UNITED STATES DISTRICT JUDGE

---

[6]      The Court denies Shelter's alternative request, raised for the first time in its reply brief, that this action be stayed pending the Oklahoma Supreme Court's final disposition in *Badillo v. Mid Century Ins. Co.*, No. 98,136, 2004 WL 1245292 (Okla. June 8, 2004). *Badillo* has not been released for publication and is therefore lacking in precedential value. *See* Okla. Stat. tit. 12, Ch. 15, Appx. 1, Rule 1.200(b)(1), (5).  Additionally, a petition for rehearing has been pending in *Badillo* for close to a year, and it is unclear whether, when, and to what extent *Badillo* may impact Oklahoma's bad faith jurisprudence and the issues at stake in this litigation.  The Court declines to indefinitely stay disposition of this action under these circumstances.